UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

AKRAM RAHAM BILAL,

                Petitioner,

v.

RANDEE REWERTS,

                Respondent.

_____/

Case No. 1:19-cv-234

Honorable Janet T. Neff

## <u>OPINION</u>

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.    Factual allegations

Petitioner Akram Raham Bilal is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Petitioner pleaded guilty to being a felon in possession of a firearm, Mich. Comp. Laws § 750.224f. Following a four-day jury trial in the Jackson County Circuit Court, Petitioner was convicted of second-degree murder, Mich. Comp. Laws § 750.317, concealing the death of an individual, Mich. Comp. Laws §333.2841(3), and two counts of possessing a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. On October 22, 2015, the court sentenced Petitioner as a third-offense felony offender, Mich. Comp. Laws § 769.11, to concurrent prison terms of 30 to 60 years on the murder conviction and 6 to 10 years each on the felon-in-possession and concealing-a-death convictions, together with two consecutive terms of 2 years on the felony-firearm convictions.

On April 11, 2019, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on March 21, 2019. (Pet., ECF No. 1, PageID.14.)

The petition raises seven grounds for relief, as follows:

I.    THE TRIAL COURT ERR[ED] WHEN DENYING [PETITIONER'S] MOTION FOR AN EVIDENTIARY HEARING AND A NEW TRIAL WHEN AN EVIDENTIARY HEARING IS NECESSARY TO SHOW [PETITIONER] WAS DENIED THE CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS TRIAL COUNSEL FAILED TO UPHOLD THE STANDARDS OF THE SIXTH AMENDMENT BY FAILING TO REQUEST A JURY INSTRUCTION ON ACCIDENT.

II.   [PETITIONER'S] CONVICTION OF SECOND-DEGREE MURDER MUST BE VACATED AS THERE WAS INSUFFICIENT EVIDENCE

TO PROVE BEYOND A REASONABLE DOUBT THAT [PETITIONER] ACTED WITH THE ESSENTIAL ELEMENT OF MALICE.

III.     [PETITIONER] IS ENTITLED TO RESENTENCING BECAUSE THE STATUTORY SENTENCING GUIDELINES WERE MISSCORED AS TO OFFENSE VARIABLES, WHICH AFFECTED THE STATUTORY GUIDELINES RANGE.

IV.     [PETITIONER] WAS DENIED HIS CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY, UNDER U.S. CONST. AMENDS. VI AND XIV; MICH. CONST. 1963, ART. 1, SEC. 20, BY THE COURT ALLOWING A JUROR THAT WAS A VICTIM OF DOMESTIC VIOLENCE, HAD LOST A CHILD AS A RESULT, AND HAD INITIALLY EXPRESSED UNCERTAINTY AS TO WHETHER SHE COULD BE UNBIASED IN [PETITIONER'S] CASE, THAT ALSO INVOLVED DOMESTIC VIOLENCE AND A DEATH AS A RESULT.

V.     PROSECUTORIAL MISCONDUCT AND/OR THE POLICE DENIED [PETITIONER'S] DUE PROCESS OF LAW IN [THE] FOLLOWING WAYS: DEN[]YING [PETITIONER] A FAIR TRIAL.

    A.     THROUGHOUT [PETITIONER'S] TRIAL, THE PROSECUTOR USED A STRATEGY THAT WAS CALCULATED TO SCARE THE JURY INTO CONVICTING [PETITIONER].

    B.     THE PROSECUTOR EXPRESSED HIS BELIEF IN THE GUILT OF [PETITIONER].

VI.     THE TRIAL COURT VIOLATED [PETITIONER'S] DUE PROCESS RIGHTS BY ADMITTING GRUESOME PHOTOGRAPHS OF THE DECEDENT WHERE THE UNFAIR PREJUDICE SUBSTANTIALLY OUTWEIGHED ANY PROBATIVE VALUE.

VII.     [PETITIONER] WAS DENIED HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY THE INEFFECTIVE ASSISTANCE OF BOTH TR[IA]L COUNSEL AND APPELLATE COUNSEL PURSUANT TO U.S. CONST. AMS. VI, XIV, CONST. 1963, ART. 1, § 20.

    A.     [PETITIONER] WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, AS EVIDENCE[D] BY TRIAL COUNSEL'S FAILURE TO PROPERLY INVESTIGATE AND PRESENT EVIDENCE.

    B.     [PETITIONER] WAS DENIED HIS DUE PROCESS RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

(Pet., ECF No. 1, PageID.5-9, 11-12.)

Petitioner's convictions arose out of the shooting death of Violet Renee McElroy. The following facts are taken from Petitioner's brief on appeal to the Michigan Court of Appeals, which is attached to the petition.

Violet McElroy died from four gunshot wounds to her head, left cheek, left upper chest, and mid-back from a .22-caliber, bolt-action rifle. (Def.-Appellant's Br. on Appeal, ECF No. 1-1, PageID.29-30.) Petitioner and McElroy were romantically involved, and police knew Petitioner from six to eight past domestic altercations, during which both Petitioner and McElroy were highly intoxicated. (*Id.*, PageID.32, 34.)

Gregory Dillay testified that he and Joseph Wisner were working for the garbage company on July 8, 2015, when Wisner found a .22 rifle, wrapped in a blanket, in a garbage dumpster. Wisner kept the weapon. Both Dillay and Wisner were interviewed by police the following day. Wisner testified consistently with Dillay. (*Id.*, PageID.29-30.)

On the morning of July 5, 2015, police officers were directed to a dumpster behind the Reed Manor Apartment complex in Jackson, Michigan, where they found a dead woman wrapped in blood-soaked bedding tied up with a cord. Sergeant Rob Jenks was directed to an apartment, where he found Petitioner. Jenks could see blood in the apartment. (*Id.*, PageID.28.) Officer Dean Schuette, Jr., testified that he also had contact with Petitioner at the apartment. Petitioner told Schuette that he did not know what had happened and that he was intoxicated. Schuette transported Petitioner to the jail. (*Id.*, PageID.29.) He subsequently interviewed Petitioner, and the recorded interview was played for the jury. (*Id.*, PageID.31.) Schuette testified that he subsequently reviewed a surveillance video, which showed Petitioner dragging the body. (*Id.*)

Petitioner testified that McElroy was his girlfriend and that they had experienced good times and bad times. Petitioner stated that McElroy had stabbed him on three prior occasions and that he had called the police on McElroy on a number of occasions. He acknowledged that he previously had been jailed after a fight with McElroy that occurred while they were both intoxicated. On July 4, 2015, he and McElroy attended a family gathering. Petitioner claimed that they had been having a good time, until McElroy became angry, throwing clothes around and throwing a phone at Petitioner. Petitioner claims that he saw an open bottle of tequila and poured it down the drain. Seeing this, McElroy said, "I'm tired of you, Bitch[.]" (*Id.*, PageID.32.) According to Petitioner, McElroy had Petitioner's rifle, which was kept loaded. Petitioner grabbed the rifle, and the firearm went off. Petitioner thought he was shot, and his "body went into some kinda mode." (*Id.*, PageID.33.) Petitioner stated that, when he saw that McElroy was dead, he panicked, put the rifle in a garbage can, wrapped McElroy in a blanket, and dragged her to the dumpster. (*Id.*) On cross-examination, Petitioner acknowledged that he did not tell his story to police at the time. Instead, he admitted, the police report indicated that McElroy came at him with a knife and that he acted in self-defense. Petitioner could not explain how McElroy had four gunshot injuries. (*Id.*, PageID.34.)

Jeffrey Amley of the Michigan State Police testified as an expert in firearms and tool-mark examination. The defense stipulated that the rifle found in the trash was the one fired by Petitioner on the evening in question. Amley testified about the firing mechanism of the bolt-action rifle (*id.*, PageID.31), which requires pulling the bolt back and re-engaging it between each shot.[1]

---

[1] A bolt-action gun is defined as "having a breech which is opened by turning a bolt and sliding it back." Online Oxford English Living Dictionary, https://en.oxforddictionaries.com/definition/bolt-action (last visited Apr. 20, 2019). *See also* Mich. Ct. App. Op., ECF No. 1-1, PageID.4 ("A bolt action requires the shooter to manually pull the

On September 17, 2015, after a day of deliberations, the Jury found Petitioner not guilty of first-degree murder, but guilty of second-degree murder, concealing the death of an individual, and felony firearm. Petitioner was sentenced as previously described on October 22, 2015.

Petitioner appealed his convictions and sentences. In the brief filed by appellate counsel in the court of appeals, Petitioner raised the first three issues presented in his habeas petition. (Def.-Appellant's Br. on Appeal, ECF No. 1-1, PageID.20-52.) Petitioner presented the fourth issue by way of a Standard 4 supplemental brief on appeal.[2] (Def.-Appellant's Supp. Br. on Appeal, ECF No. 1-1, PageID.54-66.) In an unpublished opinion issued on January 24, 2017, the Michigan Court of Appeals rejected all four appellate grounds and affirmed the convictions and sentences. (Mich. Ct. App. Op., ECF No. 1-1, PageID.68-74.) Petitioner raised the same four issues in an application for leave to appeal to the Michigan Supreme Court. (Def.-Appellant's Appl. for Leave to Appeal, ECF No. 1-1, PageID.78-92.) The supreme court denied leave to appeal on September 12, 2017. (Mich. Ord., ECF No. 1-1, PageID.95.)

Petitioner filed a motion for relief from judgment on October 18, 2017, raising the claims presented as Grounds V, VI, and VII of his habeas petition. (Mot. for Relief from J., ECF No. 1-1, PageID.97-117.) In an order issued on December 27, 2017, the trial court denied the motion, holding that Petitioner did not raise a jurisdiction defect and had failed to demonstrate good cause and actual prejudice to excuse his failure to raise the issues on appeal, either in his pro

---

bolt back and push it forward in between each shot in order to unload and load the rifle before another shot can be fired.").

[2] Michigan Supreme Court Administrative Order 2004-6 sets forth minimum standards for indigent criminal appellate defense services. Standard 4 requires counsel to inform a defendant of his right to present claims in a brief filed *in propria persona* that counsel will not present. Mich. Admin. Order No. 2004-6.

per supplemental brief in the court of appeals or in his application for leave to proceed in the Michigan Supreme Court. (Jackson Cir. Ct. Order, ECF No. 1-1, PageID.119.)

Petitioner appealed the denial of his motion for relief from judgment to both the Michigan Court of Appeals and the Michigan Supreme Court, raising the same three grounds. Those courts denied leave to appeal on August 8, 2018, and February 4, 2019, respectively. (Mich. Ct. App. Order, ECF No. 1-1, PageID.162; Mich. Order, ECF No. 1-1, PageID.204.)

Petitioner timely filed the instant habeas action on March 21, 2019.

II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299

7

F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state

appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.     Ground II:  Sufficiency of the Evidence

Petitioner contends that his conviction for second-degree murder should be vacated, as there was insufficient evidence to prove that that he acted with malice.  A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA."  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners

who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals comprehensively examined Petitioner's sufficiency claim, as follows:

> Bilal argues that the evidence was insufficient to support his second-degree murder conviction. This Court "review[s] de novo a challenge to the sufficiency of the evidence." *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014). "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).
>
> * * *
>
> "The elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). "[M]alice is the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm." *People v Aaron*, 409 Mich 672, 728; 299 NW2d 304 (1980). "Intent to kill may be inferred from all the facts in evidence, including the use of a deadly weapon." *People v Henderson*, 306 Mich App 1, 11; 854 NW2d 234 (2014). "Minimal circumstantial evidence is sufficient to show an intent to kill, and that evidence can include a motive to kill, along with flight and lying, which may reflect a consciousness of guilt." *Id.*
>
> Bilal asserts that the prosecution failed to prove the element of malice. However, the evidence showed that Violet McElroy died after she was shot in the head, cheek, chest, and back with a bolt action rifle. The bolt action rifle could not fire multiple shots unless the shooter took a series of manual steps in between each shot to prepare the rifle to fire the next shot. Thus, it was reasonable for the jury to infer that Bilal intended to fire the rifle at McElroy multiple times and that his actions demonstrated an intent to do great bodily harm, *Aaron*, 409 Mich at 728, or "[t]he intent to do an act in obvious disregard of life-endangering consequences," *Goecke*, 457 Mich at 466. Moreover, Bilal admitted that he took McElroy's body to the dumpster, disposed of the rifle in a garbage can, and lied to the police about the events of that night, all of which may "reflect a consciousness of guilt." See *Henderson*, 306 Mich App at 11. Considering all of the facts surrounding the killing, there is more than "minimal circumstantial evidence" from which a reasonable jury could infer that Bilal acted with malicious intent. *Id.*; see also *People v Bulls*, 262 Mich App 618, 627; 687 NW2d 159 (2004) (concluding that

"malice can be inferred from the use of a deadly weapon," where a shotgun was used to commit the murder).

Bilal also argues that there was insufficient evidence to support a finding that he acted without justification or excuse. He testified that after an argument, McElroy came at him with a rifle, that they struggled, and that the rifle went off. He asserted that his body "went into some kina mode," and that after that McElroy was lying dead on the ground. He argues that his testimony shows he was acting under provocation or that the death was accidental.

However, "[i]t is the jury's task to weigh the evidence and decide which testimony to believe." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008) (citation omitted). Here, there was sufficient evidence for a jury to conclude that, contrary to Bilal's testimony, he did not act with justification or excuse. First, a police officer testified that he did not see any signs of injury to Bilal's hands or feet that would indicate involvement in a physical struggle. Second, another officer testified that the interior of Bilal's apartment was messy, but that the mess appeared to be something that had been accumulating. The officer testified that there were no smashed items or pieces of overturned or broken furniture that would have indicate[d] that a struggle occurred. Third, as noted above, McElroy was shot four times with a bolt action shotgun. The medical examiner testified that the gunshot wound to the top of McElroy's head was lethal, would have killed her within seconds or minutes, and would have caused her to lose consciousness and fall down. He also testified that the gunshot wound to McElroy's cheek had damaged her spinal cord and would have also caused her to fall immediately. The third gunshot wound perforated McElroy's left lung. The medical examiner testified that, although McElroy could have remained standing, she could have died within minutes from it. Finally, the fourth gunshot wound went through the aorta, the largest blood vessel in the body. The examiner testified that it was fatal and would have caused death within seconds or minutes. The examiner opined that McElroy was alive when she received each gunshot wound. Based on this evidence, there was sufficient evidence for the jury to find lack of justification or excuse.

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to sustain Bilal's conviction for second-degree murder. *Wolfe*, 440 Mich at 515.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.68-70.) Although the court of appeals cited only Michigan cases, those cases expressly applied the *Jackson* standard. *See, e.g., People v. Wolfe*, 489 N.W.2d 748, 751 (Mich. 1992). Moreover, the standard applied in the instant case is entirely consistent with *Jackson*. As a consequence, the state court's determination rested on the correct Supreme Court standard.

In addition, the majority of the facts described in the court of appeals' opinion are consistent with the evidence described by Petitioner in his appellate brief and thus are admitted. To the extent that the court of appeals' decision contains other facts, those facts are entitled to a presumption of correctness, which Petitioner can only over come by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546. Petitioner does not challenge any facts described in state court's opinion, much less dispute those facts with clear and convincing evidence. He merely argues that the jury should have reached a different conclusion on those facts. Such a claim falls far short of overcoming the presumption of correctness owed to the state-court decision. As a consequence, the facts described by the court of appeals must be accepted by this Court.

Further, the state court determined the elements of second-degree murder, describing the element of malice as "'the intent to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm.'" (Mich. Ct. App. Op., ECF No. 1-1, PageID.69 (quoting *People v. Aaron*, 299 N.W.2d 304, 326 (Mich. 1980).) It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018)

(same).  As a result, the court of appeals' recitations of the law respecting malice are not subject to review in this proceeding.

Moreover, the state court's application of the *Jackson* standard to the elements of the offense was entirely reasonable.  Petitioner argued in the state courts and argues in this Court that the evidence showed that he was either acting under a provocation or that the shooting was accidental.  As the trial court recognized, however, no reasonable jury could have found that the shootings were accidental.  Four shots were fired.  A bolt-action rifle can only discharge one shot before the bolt must drawn back (extracting the cartridge case) and then pushed forward and re-engaged.  The court of appeals agreed, quoting the trial court's ruling on Petitioner's motion for an evidentiary hearing or new trial:

> [W]e had the demonstration a couple times of the rifle and doing exactly what you just did here, showing me—it had to manually open and close it multiple times, which would make just the one shot.  If it was one shot, I would totally agree with counsel.  It was not one shot.  It was four shots, each requiring the—after the first shot, requiring the opening and closing of the rifle.  I don't even think an accident instruction in this case would have been appropriate.  Wasn't asked for and the motion's denied.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.70-71.)  On these facts, no reasonable jury could have concluded that the shootings were the result of an accident.

In addition, these and other facts clearly combined to demonstrate malice.  Petitioner made the effort to discharge the firearm four times, hitting the victim in the top of the head, the cheek and spinal cord, the left lung, and the aorta—all shots that individually would have killed her either immediately or within minutes.  Petitioner attempted to cover-up the shooting, by taking the body to the dumpster, disposing of the rifle in a trash can, and lying to the police.  Petitioner's claim that he and the victim had been engaged in a struggle over the rifle was not corroborated by the evidence at the scene or the evidence on the victim's body.

Petitioner claims that he was acting with sufficient provocation to mitigate the offense from murder to manslaughter. Under Michigan law, "[t]o reduce a homicide to voluntary manslaughter the factfinder must determine from an examination of all of the circumstances surrounding the killing that malice was negated by provocation and the homicide committed in the heat of passion." *People v. Townes*, 218 N.W.2d 136, 140 (Mich. 1974) (citing *People v. Scott*, 6 Mich. 297, 295-96 (1859)). Provocation to mitigate a homicide from murder to manslaughter encompasses several elements. *People v. Pouncey*, 471 N.W.2d 346, 350 (Mich. 1991). "First, the defendant must kill in the heat of passion. Second, the passion must be caused by an adequate provocation. Finally, there cannot be a lapse of time during which a reasonable person could control his passions." *Id.* "The determination of what is reasonable provocation is a question of fact for the factfinder." *Id.*

The court of appeals held that the question of adequate provocation and whether Petitioner was acting under such immediate provocation were questions of fact for the jury. The court concluded that the jury's determination was amply supported by both the facts showing that Petitioner had repeatedly pulled back and re-engaged the bolt to fire four times; that the four shots were all fatal; that Petitioner had covered up his killing by separately disposing of the body and the gun; and that Petitioner initially lied to the police about what happened, never mentioning the alleged provocation. On the facts recited, the court's conclusion was patently reasonable.

Under all of these circumstances, the jury's finding of malice was supported by ample evidence. Petitioner fails to overcome the double deference owed to that determination on habeas review.

IV.     Ground III:  Sentence Scoring

Petitioner argues that the trial court improperly scored offense variables (OVs) 3 and 6.  Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief);  *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law).  There is no constitutional right to individualized sentencing.  *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978).  Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations."  *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state-law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'"  *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted).  A sentence may violate due process if it is based upon material

"misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 447.

Petitioner's sentence of 30 to 60 years' imprisonment clearly is neither arbitrary nor shocking, given that the statutory maximum for second-degree murder is life imprisonment. Further, Petitioner does not even argue that the facts found by the court at sentencing were materially false or based on false information. *Tucker*, 404 U.S. at 447. Instead, Petitioner argues only that the court should have scored certain sentencing variables differently on the facts before it. Such claims clearly fall far short of the sort of egregious circumstances implicating due process. The state-court's rejection of Petitioner's claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d).

V.      Ground IV:  Denial of Impartial Jury

Petitioner argues that he was denied his right to a fair and impartial jury when the trial court denied his challenge of Juror Nine for cause. Petitioner's claim is based on the following portion of the voir dire, as set forth in Petitioner's supplemental brief on appeal to the Michigan Court of Appeals:

[DEFENSE COUNSEL]: I hate to get into this but I'm looking at the jury packet you filled out and it says that you were a victim in a criminal case, a domestic violence case?

JUROR NINE: Yes, I was.

[DEFENSE COUNSEL]: And you lost a child as a result of that?

\* \* \*

JUROR NINE: I gave birth early to my daughter and she died.

[DEFENSE COUNSEL]: And as a result of that you understand you're gonna hear domestic violence in this case, both on each side?

[JUROR NINE]: Yeah.

[DEFENSE COUNSEL]: And understanding that, even though you've lost a child, you don't believe seeing the photographs and hearing the testimony in this case and hearing family members testify that that would have an effect on you?

[JUROR NINE]: I don't think so. To be honest, I – I don't know. It's been a long time, I don't think it would bother me.

[DEFENSE COUNSEL]: Your honor, again, and I understand I – I appreciate you being truthful and honest, but this is a murder case involving domestic violence, she lost a child, she said she thinks she can be impartial. I just think there's too much here for someone to be a victim of domestic violence and lose a child, my concern is, some – somehow throughout this trial I know what's coming in, they don't, and so I believe, based on that, that there is a high likelihood that there will be some influence on the jury and I'm asking the court to consider for cause.

THE COURT: Any response?

[THE PROSECUTOR]: Judge, the – that's not a valid argument under the rules for cause.

[DEFENSE COUNSEL]: I think it is a valid argument, your Honor. This isn't just an assault and battery case, this is – she was assaulted and actually lost a child as a result of that.

THE COURT: Why do you say it's not a valid argument?

[THE PROSECUTOR]: Judge, she indicated she could serve as a juror in this case despite that – (inaudible) – that happened in the past.

[DEFENSE COUNSEL]: And I think the court needs to look beyond what they say and look at the facts.

[THE PROSECUTOR]: Well, what I'm saying though, that – according to the rules of challenge for cause, her response doesn't fall into one that would activate one of those paragraphs that would justify a challenge for cause being sustained.

THE COURT: M-kay. Any hesitation at all about whether you can be fair and impartial?

JUROR NINE: No.

THE COURT: You think you can?

JUROR NINE: Mm-hmm.

THE COURT: Denied.

(Def.-Appellant's Supp. Br. on Appeal, ECF No. 1-1, PageID.62-63.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . . ." U.S. Const. amend. VI. The right to an impartial jury is applicable to the states via the Fourteenth Amendment. *See Turner v. Louisiana*, 379 U.S. 466, 471-72 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Further, "due process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citations omitted). "The *voir dire* is designed "'to protect [this] right by exposing possible biases, both known and unknown, on the part of potential jurors.'" *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984)).

It is well-stablished that jurors are presumed to be impartial. *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006) (citing *Irvin*, 366 U.S. at 723). When a juror's impartiality is called into question, the relevant issue is "'did [the] juror swear that he could set

aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality be believed.'" *Dennis*, 354 F.3d at 520 (quoting *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)); *see also Miller v. Webb*, 385 F.3d 666, 673 (6th Cir. 2004). The trial court must determine whether the juror demonstrates "actual bias," that is, "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Miller*, 385 F.3d at 673 (internal quotations omitted). "A juror's express doubt as to her own impartiality on *voir dire* does not necessarily entail a finding of actual bias. The Supreme Court has upheld the impaneling of jurors who had doubted, or disclaimed outright, their own impartiality on *voir dire*." *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001) (citing *Patton*, 467 U.S. at 1032). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723. In evaluating the juror's ability to lay aside partiality, the Sixth Circuit has identified a number of important factors, including the following: "'the juror's own estimation of the relevance of [the information giving rise to her partiality]; any express indications of partiality by [the] juror . . . and the steps taken by the trial court in neutralizing this information.'" *Hughes*, 258 F.3d at 459 (quoting *Gall v. Parker*, 231 F.3d 265, 308 (6th Cir. 2000)).

The Michigan Court of Appeals considered the constitutional question, as follows:

"[A] criminal defendant has a constitutional right to be tried by an impartial jury." *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008) (citations omitted). "[J]urors are 'presumed to be . . . impartial, until the contrary is shown.'" *Id.* at 550. "The burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *Id.*

During voir dire, the following exchange occurred between Bilal's trial lawyer and Juror Nine:

[Bilal's lawyer]: And understanding that, even though you've lost a child, you don't believe seeing the photographs and hearing the testimony in this case and hearing family members testify that that would have an effect on you?

> Juror Nine: I don't think so. To be honest, I—I don't know.
> It's been a long time, I don't think it would bother me.

> Bilal asserts this shows that the trial court was required to sustain his challenge for cause because Juror Nine's previous experience as a victim of domestic violence made her "biased for or against a party or attorney," MCR 2.511(D)(2), or "interested in a question like the issue to be tried," MCR 2.511(D)(12). However, in response to questioning by the court, Juror Nine stated that she had no hesitation at all about whether she could be fair and impartial. The trial court was in a position to observe Juror Nine's demeanor and all of her statements in context, and the trial court denied the challenge for cause after being satisfied that Juror Nine could be fair and impartial. The trial court's superior ability to determine whether a potential juror will be impartial is entitled to deference. *Williams*, 241 Mich App at 522. Moreover, "[a] juror who expresses an opinion referring to some circumstance of the case which is not positive in character, but swears he can render an impartial verdict, may not be challenged for cause." *People v Roupe*, 150 Mich App 469, 474; 389 NW2d 449 (1986); see also MCL 768.10. Therefore, Bilal has not met his burden of "establish[ing] that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt," *Miller*, 482 Mich at 550, and the trial court did not abuse its discretion by denying his challenge for cause, *Williams*, 241 Mich App at 521.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.73.) While not citing federal precedent, the court of appeals squarely applied the relevant Supreme Court standard.

The question of bias of an individual juror at a state criminal trial is one of fact. *Dennis,* 354 F.3d at 520 (citing *Patton,* 467 U.S. at 1036); *see also Sizemore v. Fletcher,* 921 F.2d 667, 672-73 (6th Cir. 1990) (citing *Smith v. Phillips*, 455 U.S. 209, 218 (1982)). A state court decision based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state court proceeding and not simply erroneous or incorrect. *Keith v. Mitchell,* 455 F.3d 662, 669 (6th Cir. 2006) (citing *Williams,* 529 U.S. at 409-11); *see also Young v. Hofbauer,* 52 F. App'x 234, 237 (6th Cir. 2002). The state court's factual determination is entitled to a presumption of correctness, which is rebuttable only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The factual determinations of the trial and appellate courts were patently reasonable, based on the facts as described by Petitioner. Juror Nine at all times stated that she

believed she would not be affected by her past experience, which had occurred a long time before the trial. And she unequivocally stated that she could be fair and impartial. Petitioner does not seriously contest these facts. He merely insists that the state courts should have concluded that no juror who had lost a child due to domestic violence could be fair, regardless of the juror's own assessment of her abilities. Such an argument, however, fails to overcome the presumption of correctness owed to the state court's determination of the facts. It most certainly does not constitute the clear and convincing evidence necessary to overcome that deference.

The Court therefore concludes that the state court's denial of Petitioner's fourth habeas ground was both factually and legally reasonable under United States Supreme Court precedent.

VI.     Ground I: Ineffective Assistance of Trial Counsel

Petitioner argues in his first habeas ground that his trial attorney rendered ineffective assistance of counsel when he failed to request a jury instruction on the defense of accident. He contends that the trial court erred in denying him an evidentiary hearing on the issue.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350

U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals rejected Petitioner's claim, affirming the trial court's determination that an instruction on accident was not proper on the facts before the court. As a result, the court held counsel was not ineffective in failing to seek such an instruction:

> In order to establish that his lawyer was ineffective, Bilal must establish that his lawyer's "performance was below an objective standard of reasonableness under prevailing professional norms" and that, but for that deficient performance "the result of the proceedings would have been different." *People v Stanaway*, 446 Mich 643, 687-688; 521 NW2d 557 (1994). We presume that a defense lawyer provided effective assistance, and "[t]he defendant bears a heavy burden of proving otherwise." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). We will not assess a trial lawyer's competence with the benefit of hindsight, nor will

we second-guess counsel on matters of trial strategy. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015) (quotation marks and citation omitted).

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "Jury instructions must include all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence." *Id.* In denying Bilal's motion for an evidentiary hearing or a new trial based on ineffective assistance, the trial court reasoned:

> we had the demonstration a couple times of the rifle and doing exactly what you just did here, showing me—it had to manually open and close it multiple times, which would make just the one shot. If it was one shot, I would totally agree with counsel. It was not one shot. It was four shots, each requiring the—after the first shot, requiring the opening and closing of the rifle. I don't even think an accident instruction in this case would have been appropriate. Wasn't asked for and the motion's denied.
>
> I'm not going to have an evidentiary hearing on this.

Based on the record before us, the trial court did not clearly err in finding that the defense of accident would not have applied even if it had been requested. McElroy received four gunshot wounds: one to the top of her head, one to her left cheek, one to her upper left chest, and one to the middle of her back. There is no dispute that she was shot by Bilal with a .22 caliber bolt action rifle. A bolt action requires the shooter to manually pull the bolt back and push it forward in between each shot in order to unload and load the rifle before another shot can be fired. Thus, as found by the trial court, it is possible for one shot to be fired accidentally from a bolt action rifle, but deliberate human action is required before a person can fire additional shots from it. Thus, an accident instruction would have been inappropriate in this case because the evidence does not support a conclusion that Bilal fired the rifle accidentally, i.e. unexpectedly, by chance, or by mishap. See *People v Hess*, 214 Mich App 33, 37; 543 NW2d 332 (1995) (defining "accident"). Because an accident instruction was not appropriate in this case, we conclude that Bilal's trial lawyer was not ineffective for failing to request it.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.70-71.)

The Michigan Court of Appeals properly applied the *Strickland* standard, as required by Supreme Court precedent. Petitioner's claim of accident was wholly unsupported, given the fact that a bolt-action rifle could only fire four shots if the shooter repeatedly drew back and re-engaged the bolt. Thus, any motion seeking an instruction on the issue of accident would

have been meritless.  Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).  Moreover, because the facts at trial patently excluded the defense of accident, no basis exists for concluding that an evidentiary hearing was either relevant or necessary.

Under these circumstances, Petitioner utterly fails to overcome the double deference owed to the state court's rejection of Petitioner's claim of ineffective assistance of trial counsel.

VII.    Grounds V, VI & VII:  Procedural Default

In his fifth ground for relief, Petitioner argues that the prosecutor and/or the police denied him a fair trial in two ways.  First he contends, the prosecutor used a strategy calculated to scare the jury into convicting Petitioner.  Second, he argues that the prosecutor improperly expressed his belief in Petitioner's guilt.  In Ground VI, Petitioner argues that he was denied due process by the admission of gruesome photographs of the proceeding, because the unfair prejudice substantially outweighed the probative value.  In Ground VII, Petitioner contends that his trial attorney was ineffective in failing to investigate Petitioner's mental health and failed to test Petitioner's underwear for the presence of gun powder residue.[3]

Petitioner raised Grounds V, VI, and VII for the first time in his motion for relief from judgment.  As cause excusing his failure to raise the claim on direct appeal, Petitioner argued

---

[3] Petitioner also argues that appellate counsel was ineffective in failing to raise the claims presented in the motion for relief from judgment.  The claim concerning appellate counsel is relevant solely to whether Petitioner can demonstrate cause and prejudice for his failure to raise Grounds V, VI, and VII (insofar as it alleges ineffective assistance of trial counsel) on direct appeal.  The Court addresses the claim of ineffective assistance of appellate counsel in analyzing Petitioner's procedural default.

that both trial and appellate counsel were ineffective. The trial court held that Petitioner had failed to demonstrate good cause and actual prejudice to excuse him from failing to raising the claim either in his supplemental brief on appeal to the Michigan Court of Appeals or in his application for leave to appeal to the Michigan Supreme Court. (Jackson Cty. Cir. Ct. Order, ECF No. 1-1, PageID.119-120 (citing Mich. Ct. R. 6.508(D)(3).) Both the court of appeals and the Michigan Supreme Court denied leave to appeal in standard orders invoking Mich. Ct. R. 6.508(D). (Mich. Ct. App. Order, ECF No. 1-1, PageID.162; Mich. Order, ECF No. 1-1, PageID.204.)

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). Although there may be an "exceptional case in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question," *see Lee v. Kemna*, 534 U.S. 362, 376 (2002), this case does not fall within that "limited category." *Id.*

To determine whether Petitioner has been denied relief based on a procedural default, we look to the last "reasoned judgment rejecting the [federal] claim." *Ylst*, 501 U.S. at 803; *see also Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). The doctrine is applicable if "the last state court to review [the prisoner's] conviction 'clearly and expressly' relied on [the prisoner's] procedural default in its decision affirming Petitioner's conviction." *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994) (quoting *Ylst*, 501 U.S. at 803).

In *Guilmette*, 624 F.3d at 289-90, the Sixth Circuit, in an *en banc* decision, held that brief form orders by the Michigan appellate courts invoking MICH. CT. R. 6.508(D) are unexplained orders within the meaning of *Ylst*, 501 U.S. at 803. Such form orders are presumed to uphold or reject the last reasoned decision below. *Guilmette*, 624 F.3d at 291-92 (citing *Ylst*, 501 U.S. at 803). In addition, in *Wilson v. Sellers*, 138 S. Ct. 1188 (2018), the Supreme Court held that, in reviewing the basis for a summary appellate order of affirmance, the habeas court should apply the doctrine of *Ylst*, 501 U.S. 797, and "look through" the unexplained order to the last reasoned decision of the state court. *Id.* at 1193-94.

Under Mich. Ct. R. 6.508(D)(2) and (3), a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised on direct appeal. The Sixth Circuit has held that a state-court's denial of a motion under Mich. Ct. R. 6.508(D)(2), which precludes relief if the claim already was raised and denied in a previous appeal, is a denial on the basis of collateral estoppel, which does not procedurally default a claim for habeas relief. *See Amos v. Renico*, 683 F.3d 720, 727 (6th Cir. 2012) (citing *Skinner v. McLemore*, 425 F. App'x 491, 495 (6th Cir. 2011)). For a claim that could have been raised in a previous appeal, the defendant is entitled to relief only if he can establish "good cause" for failing to raise the grounds on appeal and "actual prejudice," as shown by a "reasonably likely

chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand."  Mich. Ct. R. 6.508(D)(3)(a)-(b).

In assessing how "firmly" a state procedural rule has been established, the critical inquiry is whether, viewed from the time of the petitioner's later significant actions or inaction, the petitioner could be deemed to have been apprised of the procedural rule's existence. *Luberda v. Trippett*, 211 F.3d 1004, 1006-07 (6th Cir. 2000).  Because Mich. Ct. R. 6.508(D) was enacted in 1989 and Petitioner's conviction and appeals took place some time thereafter, Mich. Ct. R. 6.508(D) was a "firmly established" procedural rule for purposes of Petitioner's action. *See Luberda*, 211 F.3d at 1007; *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998).

Applying these authorities to the instant case, the trial court issued the last reasoned opinion in the case, as the appellate courts issued only brief form orders affirming the trial court's decision. *Id.*  The trial court concluded that Petitioner had failed to demonstrate good cause and actual prejudice or other basis sufficient to overcome his failure to raise Grounds V, VI, and VII on direct appeal, either in his supplemental brief on appeal or in his pro per application to the Michigan Supreme Court.  The court therefore held that the motion for relief from judgment was barred by Mich. Ct. R. 6.508(D)(3).  Thus, the trial court expressly relied on the firmly established procedural bar of Mich. Ct. R. 6.508(D)(3) to deny Petitioner's motion, and the court held that Petitioner's claim of ineffective assistance of appellate counsel did not excuse his failure to comply with the rule.  Petitioner's claim, therefore, is procedurally defaulted.

Where, as here, a petitioner has procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of

justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner does not claim actual innocence, much less demonstrate innocence by clear and convincing evidence. He therefore must show cause and actual prejudice to excuse his default.

To show cause sufficient to excuse his procedural default, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). As cause to excuse his default, Petitioner argues that appellate counsel was ineffective in failing to raise the claim on direct appeal. Attorney error rising to the level of ineffective assistance of counsel, and a showing that the factual or legal basis for a claim was not reasonably available, may serve as cause excusing a procedural default. *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010) (citing *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (citing *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991) (quotations omitted))).

As the Court earlier discussed, to establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687. With respect to

claims of ineffective assistance of appellate counsel, appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

      Petitioner cannot demonstrate cause or prejudice sufficient to excuse his procedural default. Both this Court and the Eastern District of Michigan repeatedly have held that a Michigan criminal defendant is not prejudiced by appellate counsel's failure to raise a claim on direct appeal when the defendant files a Standard 4 brief, in which he could have raised those claims. *See Coffin v. Napel*, No. 1:12-cv-1196, 2017 WL 876378, at *14 (W.D. Mich. Jan 31, 2017); *Tighe v. Berghuis*, No. 1:12-cv-1314, 2016 WL 5537287, at *4 (W.D. Mich. Sept. 30, 2016) (where petitioner's appellate counsel filed a brief and petitioner filed a Standard 4 brief raising additional issues, petitioner "had the opportunity to bring any claims he desired on direct appeal" and "therefore cannot show prejudice from appellate counsel's failure to raise particular issues on direct appeal"); *Jones v. Palmer*, No. 2:13-cv-13864, 2016 WL 98157, at *9 (E.D. Mich. Jan. 8, 2016) (holding that the petitioner's failure to raise the claim in his supplemental brief on appeal

undermined any assertion of cause and prejudice to excuse his default); *Rice v. Olson*, No. 2:13-cv-10060, 2016 WL 74856, at *8 (E.D. Mich. Jan. 7, 2016) ("Because the Michigan Court of Appeals considered, and rejected the claims raised by petitioner in his supplemental pro per brief, petitioner is unable to show that he was prejudiced by appellate counsel's failure to raise these claims in the appeal brief filed by counsel."); *Clark v. MacLaren*, No. 2:10-cv-10748, 2013 WL 147626, at *7 (E.D. Mich. Jan. 14, 2013) (same); *Rockwell v. Palmer*, 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008) (where petitioner raised additional claims on appeal in two separate briefs, he could not demonstrate cause or prejudice arising out of appellate counsel's failure to raise a claim that petitioner had neglected).

Here, Petitioner filed a supplemental brief raising an additional issue, yet he failed to raise the grounds presented in his motion for relief from judgment. He also failed to present the issues in his application for leave to appeal to the Michigan Supreme Court. Because Petitioner both had and exercised the opportunity to raise additional claims in two briefs, he cannot demonstrate that appellate counsel's failure to present the claims caused him to default his claims on direct appeal or that he was prejudiced by counsel's failures.

Moreover, prejudice requires the Petitioner to show that the alleged error "worked to his *actual* and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). "'[T]he prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of Petitioner's guilt and a lack of evidence to support his claim.'" *Perkins*, 58 F.3d at 219 (quoting *Rust*, 17 F.3d at 161-62).

Where, as here, the evidence, as admitted by Petitioner and found by the Michigan Court of Appeals, demonstrated very strong evidence of Petitioner's guilt—he shot the victim four

times after having to manually re-engage the bolt action, he hid the body in the dumpster, he hid the gun in the trash, and he lied to law enforcement—no basis exists for finding that Petitioner was prejudiced by counsel's failure to raise the claims on direct appeal.

As a consequence, Petitioner is not entitled to habeas relief on Grounds V, VI, and VII of his petition, because the claims are procedurally defaulted.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.


Dated:   May 6, 2019                              /s/ Janet T. Neff                              
                                                 Janet T. Neff
                                                 United States District Judge